**FIRST STATE BANK OF BISHOP v. GREBE.**

**No. 11110.**

Court of Civil Appeals of Texas.
San Antonio.
March 18, 1942.

Rehearing Denied May 20, 1942.

See, also, Tex.Civ.App., 106 S.W.2d 382; 136 Tex. 226, 150 S.W.2d 64.

Boone, Henderson, Boone & Davis, of Corpus Christi, for appellant.

Kleberg, Eckhardt & Lowe, of Corpus Christi, and Fuchs & Fuchs, of New Braunfels, for appellee.

SMITH, Chief Justice.

This action was brought by appellee, Florine Ella Grebe, a minor, by her next friend and stepfather, Louis Hauptreif, against appellant, First State Bank of Bishop. The case has been twice tried and appealed. The first trial resulted in judgment in favor of the Bank and on appeal that judgment was affirmed by this Court. Grebe v. First State Bank, 106 S.W.2d 382. On writ of error the Supreme Court reversed the judgment of this and the trial court, and remanded the cause, Mr. Justice Critz dissenting. 136 Tex. 226, 150 S.W.2d 64, 65.

On the return of the mandate of the Supreme Court to the trial court, appellee filed a motion for judgment in the latter court. Appellant filed a plea in abatement, an amended answer including prayer that additional parties be made defendants in the suit, and set up various additional matters not adjudicated in prior proceedings. The trial judge overruled appellant's plea in abatement, disregarded its amended answer, refused to allow its demand for a jury and thereupon, refusing to hear any testimony and granting appellee's motion, rendered judgment for appellee for the amount of her claim plus interest computed at the time by the trial judge. The original trial of the cause was before the then district judge, Honorable Birge Holt, who subsequently retired, whereas, the judgment here in question was rendered by Honorable Cullen W. Briggs, his successor in office.

The controlling question for decision here is that of whether the trial court erred in refusing to retry the case upon the return of the mandate of the Supreme Court, reversing and remanding the cause, and in rendering judgment upon the opinion of the Supreme Court without any further proceedings following the return of the mandate.

We quote from the majority opinion of the Supreme Court:

"We shall designate the parties as plaintiff and defendant, as they were designated in the trial court.

"Plaintiff seeks a reversal of the judgments of the trial court and of the Court of Civil Appeals mainly upon two principal grounds. The first ground is as follows: That the funds on deposit in the bank in the name of W. F. Grebe were community property of W. F. Grebe and his surviving wife, and that one-half belonged to plaintiff and the other half belonged to her mother, as the sole surviving heirs of the deceased W. F. Grebe; and that after all the community debts were paid, the bank had no authority to transfer the minor's share of such deposit to her mother, without requiring the mother to qualify as survivor in community, administratrix, or guardian, when it had knowledge of the status of the parties and the nature of the fund.

"The trial court filed findings of fact, among which are the following:

"(1) That W. F. Grebe died intestate on March 1, 1924, leaving surviving him as his heirs at law his wife, Mrs. W. F. Grebe, and a minor child, the plaintiff in this suit, and that no administration of any kind was had on his estate or on the estate of said minor; which facts the officers of the bank knew.

"(2) That at the time of his death W. F. Grebe had $3,956.47 on deposit with the bank. That on April 2, 1924, Mrs. W. F. Grebe had deposited to her account in the bank the sum of $1,242.37, proceeds from the sale of cotton made by her deceased husband before his death, and that the officers of the bank knew the source of said money and knew it to be community property.

"(3) That on May 14, 1924, Mrs. Grebe, having paid the funeral expenses and all debts of the deceased from the deposit in the name of W. F. Grebe, transferred, or directed the transfer of, the balance of $3,791.65 remaining in the account of W. F. Grebe to her account. All of said money was community property, which fact the bank then knew. The bank also then knew that W. F. Grebe left a minor daughter.

"(4) That on June 30, 1924, Mrs. Grebe made a loan of $6,000 to her brother-in-law, H. W. Grebe, and transferred that amount from her account to him; after which $377.68 remained in her account.

"(5) That the officers of the bank knew that the loan was made by Mrs. Grebe to H. W. Grebe, and knew that it was used by H. W. Grebe to buy land, and that the vice president of the bank took the acknowledgment to the deed to H. W. Grebe. Neither the bank nor any of its officers participated in the loan transaction or in the land purchase, except as above stated."

It appears that the Supreme Court made an additional finding of fact which was not included in the findings made by the trial judge or this Court, and which the trial court had expressly refused to find, to-wit: that the bank knew that all the community debts of the Grebes had been fully paid at the time it paid over the community funds to Mrs. Grebe. As we interpret the opinion of the Supreme Court their decision of the case was based at least in part upon this additional finding, and it is inferable that but for this additional finding that decision might have been different, since the fact so found was incorporated into each statement of the hypothesis upon which the decision rested. Appellant complains bitterly against the action of the Supreme Court in making this additional finding, upon the familiar theory that trial courts and Courts of Civil Appeals alone have power to determine facts, and that the Supreme Court is without such power. It is elemental, of course, that it is not a prerogative of the Supreme Court to make findings of fact upon disputed issues appearing in the record before them. But it is clearly within their province, and it is their duty, to take notice of undisputed facts of record, and if material give them effect in their decision. We must assume, then, at least in the absence of the statement of facts in the former appeal, that the record before the Supreme Court in the former appeal conclusively disclosed the fact found by that Court in the majority opinion, but which the trial court not only failed but expressly refused to find, that the bank did know, at the time it paid over the community funds to Mrs. Grebe, that all the community debts of the Grebes had been paid. We make these observations in deference to appellant's earnest complaint of the additional, and apparently material, finding made by the Supreme Court.

After announcing the rules of law deemed by them as applicable to the case made, and upon which they based their ultimate decision of the case, the Supreme

Court, in the majority opinion by Mr. Justice Sharp, concluded:

" * * * It therefore follows, in view of the undisputed facts in this case, that after all the community debts had been paid, one-half of the community funds belonged to the plaintiff, and that plaintiff is entitled to recover from the bank one-half of all community funds of the deceased and his wife that had been placed to the credit of the mother in such bank with full knowledge on the part of the officials of the bank of the nature of the account and the minor's interest therein.

"Therefore the judgments of the Court of Civil Appeals and of the trial court are reversed, and this cause is remanded to the trial court *for further proceedings consistent with this opinion.*" (Emphasis ours.)

The mandate sent down from the Supreme Court to the trial court embraced the same order.

The record shows that in response to the judgment of the Supreme Court appellee filed her motion in that court praying that judgment be there rendered for appellee, but, in the alternative, if that relief be denied, then that the Supreme Court direct the trial court to render judgment for appellee. The Supreme Court, however, denied both prayers, and let the order stand reversing the judgments of this and the trial court, and remanding the cause "for further proceedings consistent with this opinion."

Appellant urges with much force and persuasiveness that by these rulings the Supreme Court declined to return the case to the trial court for the sole purpose of having that court render judgment on the record as thus made, but remanded the cause for a new trial upon the whole case in accordance with the principles enunciated in the opinion of the Supreme Court. The question thus posed is by no means without its serious difficulties.

██ The decision here seems to turn on the interpretation to be given to the qualification appended by the Supreme Court to their order reversing the judgments rendered below and remanding the cause "to the trial court for further proceedings consistent with this opinion." The inquiry is narrowed to the question of the effect to be given the clause "for further proceedings consistent with this opinion." We say that every order of an appellate court reversing and remanding a cause to the trial court carries with it the necessary instruction,

whether expressed or not, that all further proceedings in the case in the trial court must be "consistent with the opinion" of the reversing court; that qualification is understood, is implied by necessity, so that, at least usually, it adds nothing to the result to write it into the opinion or include it in the mandate.

Appellee's contention is that the qualification that the cause be remanded to the trial court for further proceedings consistent with the opinion of the Supreme Court amounted to an instruction to the trial court to proceed and render judgment for appellee without a new trial or any other proceedings in that court. In support of this contention appellee relies chiefly upon the decision of the Supreme Court in Wells v. Littlefield, 62 Tex. 28, 29, but in addition cites numerous other cases as well. None of the cases cited are deemed in point here, since in each of them the cause was remanded with instructions to the trial court to do a specified thing, or enter a specific judgment, or limit its proceedings to a particular inquiry, whereas, in this case the order and mandate of the Supreme Court was, only, that the judgment of the trial court be "reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion."

As stated, appellee relies chiefly upon the case of Wells v. Littlefield, 62 Tex. 28, in which the Supreme Court issued a writ of mandamus requiring the trial judge to render judgment for Wells in pursuance of specific directions given by the Supreme Court in their opinion handed down and mandate issued in Wells v. Littlefield, 59 Tex. 556, as follows:

" * * * The judgment below will be reversed and the cause remanded, with directions to the court below to enter up such judgment in favor of the appellant, Marshall Wells, as under the law as announced by this opinion he was entitled to obtain upon the former trial of the cause, from the result of which this appeal was taken; and to allow him such recovery as he had a right to in the state of the record below, had the decision there been in his favor upon the trial of the right to the property in controversy."

Upon a retrial of that case in the District Court, Littlefield amended his pleadings setting up matters disclosed in newly discovered testimony, and the trial court heard evidence in a new trial and again rendered judgment thereon for Littlefield

against Wells. As the Supreme Court in reversing the judgment and remanding the cause had plainly directed the trial court to proceed to render judgment for Wells against Littlefield, writ of mandamus was issued directing the trial judge to render judgment as before directed. 62 Tex. 28.

No such case as that is presented here, for here the Supreme Court, in ordering a remand, not only did not render judgment or direct the trial court to render judgment for appellee, but by implication held that it was not· a case for rendition or authorizing or directing the trial court to render that or any other particular judgment. This was evidenced by the refusal of the Supreme Court to grant judgment for appellee. The Supreme Court simply reversed the judgment of the trial court in favor of appellant, and remanded the cause to the trial court for further proceedings consistent with the opinion of the Supreme Court. The order to the trial court was in effect, simply, that the trial judge proceed with a new trial and render judgment upon the new record in accordance with the principles and holdings announced in the opinion of the Supreme Court. Roberts v. Armstrong, Tex.Com. App., 231 S.W. 371, in which the "holdings" of the Commission of Appeals were expressly approved by the Supreme Court. The decision in that case grew out of the opinion of this Court in the first appeal in the same case (Armstrong v. Gifford, 196 S.W. 723) and opinion of the Galveston Court in the second appeal, 212 S.W. 227. In its mandate in that case this Court reversed the judgment and "remanded the cause for further proceedings in accordance with" the reversing opinion. Following this remand the trial court in that case, as was done in this case, refused to hear any evidence or consider or submit any is-sue except that upon the amount of rents involved in the case. The losing party again appealed, and the Galveston Court affirmed the judgment. Writ of error was granted and the Supreme Court, according to its reported opinion, ordered that judgments of the trial court and Court of Civil Appeals be reversed and remanded "for further proceedings in accordance with this opinion." 231 S.W. 371, 375. On a subsequent appeal, however, it was stated that the Supreme Court had reversed the judgment "and remanded the cause to be tried upon" a sole issue therein indicated, Tex. Civ.App., 269 S.W. 452, 453. The specific

instruction must have been embraced in the mandate of the Supreme Court, for it is not disclosed in the opinion. But the point is immaterial here. The point in issue here is that the Supreme Court held (231 S.W. 371, 375) that upon an opinion and mandate remanding a cause for further proceedings "in accordance [consistent] with this opinion," when not modified by more specific instructions, has the effect of remanding the cause for a new trial on all issues of fact. It was so held by the Supreme Court, as we construe their opinion, in the cited case. 231 S.W. 371.

Now, in this case, on return of the mandate of the Supreme Court to the trial court, appellant demanded a jury and paid the jury fee, and filed an amended answer, including a plea to abate the suit until the recently appointed legal guardian of appellee's estate was made a party in lieu of her stepfather, Hauptreif, who had brought the suit for appellee as her next friend; followed by general demurrer and general denial and special answer, to the effect, as stated in appellant's brief, of "setting up numerous defenses not pleaded at the time of the trial from which the original appeal was taken, including an allegation that taxes in the sum of $21.60, owed by the community estate for 1924 State and County taxes, were paid October 30th, 1924, which was four months after the date of the transactions with the bank involved in this suit and alleging that therefore indebtedness of the community estate did exist when the bank paid the money to plaintiff's mother, and that other indebtedness existed. By said amended answer, appellant further set up that the plaintiff's parents owned no homestead at the time of her father's death and that her father was a farmer, and that the community estate did not have other exempt property allowed by our exemption laws, and that the plaintiff's mother had no separate property for her maintenance, and that plaintiff's mother was therefore entitled to allowances for a year's support and in lieu of homestead and in lieu of other exemptions; that the money loaned by plaintiff's mother was used to purchase a farm by the borrower on which a lien was retained and which farm was conveyed to plaintiff's mother as trustee for the minor plaintiff in this case, and as such trustee owned and held by plaintiff's said mother for the plaintiff from 1928 until after the filing of this suit in 1932, during which time rents and revenues

were collected by plaintiff's said mother as trustee; that plaintiff's mother and the next friend herein, the plaintiff's stepfather, had conspired to deprive defendant of its legal right and that there had never been any accounting between the minor plaintiff and her mother and that the minor plaintiff was entitled to recover no more from the bank than she could recover from her mother in a legal accounting and that defendant, appellant herein, was entitled to be subrogated to the rights of plaintiff's mother and to set up all of the defenses and equities which plaintiff's mother could set up against the plaintiff in an accounting, and that the amount expended by the plaintiff's mother for payment of debts and the amounts to which she would have been entitled as allowances for a year's support and in lieu of homestead and other exemptions should be treated as applied for, and were applied for by defendant bank, and should be adjudicated. Appellant then prayed that the plaintiff's mother, joined pro forma by her husband, Louis Hauptreif, and J. D. Howard, the guardian of the estate of the minor plaintiff, be cited, and that the suit be abated until the guardian had appeared, and that upon trial a full accounting be required between the minor plaintiff and her said mother and that the debts and charges against the community estate which were paid by the plaintiff's mother, together with a reasonable amount as allowances for a year's support and in lieu of homestead and other exempt property, be ascertained and allowed as credits and deductions and that defendant be subrogated to the rights of the minor plaintiff's mother, and that there be a full and fair adjustment of the equities between the parties."

On the other hand, appellee filed no other pleading than a formal motion for judgment "in favor of Plaintiffs on the undisputed facts as found by the Supreme Court of Texas in its opinion of March 12, 1941, reversing and remanding this cause for further proceedings consistent with said opinion, * * *."

The trial court overruled appellant's general demurrer to that motion, refused appellant's demand for jury, refused to allow appellant to introduce any evidence, heard no evidence from either party on the merits or on appellee's motion for judgment, and, granting that motion, rendered judgment for appellee for $2,517.01, with interest, thereupon computed, from the date of the filing of the suit.

On the authority of Roberts v. Armstrong, Tex.Com.App., 231 S.W. 371, supra, we hold that the trial court erred in refusing appellant's demand for retrial on the merits.

The judgment is reversed and the cause remanded for another trial in consonance with the opinion of the Supreme Court in the case.